Darlene JESPERSEN, Plaintiff,

v.

HARRAH'S OPERATING COMPANY,
INC., a Delaware Corporation
Defendant.

No. CV–N–01–0401–ECR(VPC).

United States District Court,
D. Nevada.

Oct. 22, 2002.

Order Denying Reconsideration
Nov. 27, 2002.

Jeffrey A. Dickerson, Kenneth J. Mckenna, Reno, NV, for Plaintiff.

Veronica Arechederra–Hall, Littler Mendelson, PC, Las Vegas, NV, for Defendant.

## ORDER

EDWARD C. REED, JR., District Judge.

This action arises out of plaintiff Darlene Jespersen's ("Plaintiff") termination from employment with defendant Harrah's Operating Company ("Defendant"). Plaintiff filed this lawsuit, asserting that Defendant discriminated against her in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1), and alleging related state tort claims.[1] Defendant moved for summary judgment (# 20). Plaintiff opposed (# 22) and Defendant replied (# 23).

## BACKGROUND

Plaintiff worked at Harrah's from 1979 until 2000. She was initially hired as a dishwasher, but was soon promoted. She worked as a bartender for the majority of her time at Harrah's. Defendant introduced a program in early 2000 to universally improve the performance of its beverage employees. As part of that program, Defendant issued its "Personal Appearance Standards" to govern how its employees should look. In March 2000, Plaintiff received the Personal Appearance Standards and committed to meeting those standards. In April 2000, Defendant revised the Personal Appearance Standards. One of the revisions was the addition of a makeup requirement. The standard differed for males and females. Specifically, the policy for females said: "[m]akeup ... must be worn and applied neatly in complimentary colors. Lip color must be worn at all times."

On May 5, 2000, Plaintiff refused to sign-off on the standards because of the makeup requirement. She had worn makeup in the past and it had made her feel extremely uncomfortable, ill and violated. Defendant told her that compliance was mandatory. When Plaintiff still refused to comply, she was given the opportunity to view job openings, but did not apply for any of them. Defendant thereafter terminated Plaintiff's employment. After exhausting her administrative remedies, Plaintiff filed this action.

## STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture,* 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue

---

**1.** Plaintiff also included a claim of retaliation in her complaint, but stipulated to dismiss that claim in her opposition. Opp. at 13.

of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Summary Judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.,* 192 F.3d 1260, 1264 (9th Cir.1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## ANALYSIS

### I. Evidentiary Objections

As a preliminary matter, we address Plaintiff's objections to Defendant's evidence. Plaintiff asserts that the "affidavits" attached in support of Defendant's motion are deficient because they are not notarized. Had Defendant submitted unnotarized affidavits, this argument might be valid. However, the evidence at issue consists of declarations signed under penalty of perjury as required under 28 U.S.C. § 1746. Therefore, Plaintiff's objections are without merit.

### II. Title VII.

■ Title VII makes it unlawful to discriminate against any individual on account of protected traits, including one's sex. 42 U.S.C. § 2000e–2(a)(1). To prove one's case under Title VII, a plaintiff may proceed on one of two recognized theories: disparate treatment or disparate impact. *Frank v. United Airlines, Inc.,* 216 F.3d 845, 853 (9th Cir.2000). Disparate treatment arises when an employer treats some people less favorably than others because of their sex; while disparate impact involves an employer's practice that is facially neutral but falls more harshly on one group than another. *Id.* (internal citations and quotation marks omitted). Disparate treatment is permissible under Title VII, but only it if is justified by a bona fide occupational qualification ("BFOQ"). *Id.*

The facts in this case are largely undisputed. Defendant terminated Plaintiff because she refused to comply with Defendant's "Personal Appearance Standards" because they required her to wear makeup. The question we must answer is whether that policy, which required women to makeup, but prohibited men from doing the same, is discriminatory under Title VII on a theory of disparate treatment.[2]

---

**2.** Defendant's motion attacks Plaintiff's gen-

der discrimination claims, arguing that its

It is well established that grooming and appearance standards that have different but equal requirements for men and women are not violative of Title VII. *See, e.g., Willingham v. Macon Tel. Publishing Co.,* 507 F.2d 1084 (5th Cir.1975)(restrictions on length of men's hair permissible where there is no restriction for women); *Baker v. California Land Title Co.,* 507 F.2d 895 (9th Cir.1974)(same); *but see Carroll v. Talman Federal Savings & Loan Ass'n,* 604 F.2d 1028 (7th Cir.1979) (requiring women to wear uniforms but allowing men to wear "customary business attire" found discriminatory and unequally burdensome because of natural tendency to assume uniformed women have less professional status than men in normal business clothes).

Underlying these holdings is the premise that employer's sex-differentiated regulation of dress, cosmetic or grooming practices, which do not discriminate on the basis of immutable characteristics or intrude upon a person's fundamental rights, do not fall within the purview of Title VII. *See Willingham,* 507 F.2d at 1091; *Baker,* 507 F.2d at 896. For example, in *Baker,* the Ninth Circuit noted that Congress' objectives in passing Title VII was not meant to govern "hair styles or modes of dress over which the job applicant has complete control," but rather was meant to address "itself to characteristics which the applicant, otherwise qualified, had no power to alter." *Baker,* 507 F.2d at 897. Therefore, the fact that an employer may implement sex-differentiated appearance standards does not necessarily mean that such standards are unlawfully discriminatory.

■ The key consideration to determine whether a sex-differentiated appearance standard is discriminatory is whether it is applied evenhandedly to both sexes. *Frank,* 216 F.3d at 854 (9th Cir.2000); *Gerdom v. Continental Airlines, Inc.,* 692 F.2d 602 (9th Cir.1982). "An appearance standard that imposes different but essentially equal burdens on men and women is not disparate treatment." *Frank,* 216 F.3d at 854. In *Frank,* the court noted that "an employer can require all employees to wear sex-differentiated uniforms, but it cannot require only female employees to wear uniforms." *Id.* at 855. There, the court held that weight restrictions that held males to a large-framed standard but held females to a medium-framed standard was facially discriminatory because it imposed different *and more burdensome* weight standards on women. *Id.* (emphasis in original).

■ Although we have yet to encounter a decision that deals directly with a policy that requires one sex to wear makeup and forbids the other from doing so, the Ninth Circuit's analysis in *Frank* is instructive. That is, given that Defendant's Personal Appearance Standards prescribed different requirements for men and women, the question is whether the sex-differentiated, standards imposed unequal burdens. Defendant argues that while its standards are not identical for each sex, one is not more burdensome than the other. Upon careful consideration, we agree.

The policy at issue required women to wear makeup, but prohibited men from doing the same. Ex E, attached to Def.'s Motion. It allowed women to wear their

policy is not discriminatory. While it is quite clear that these arguments address whether Plaintiff was subject to discrimination under a disparate treatment theory, it is not clear whether the motion is also intended to address Plaintiff's separate claim of disparate

impact. *See* Comp. ¶¶ 11–14. Because we are unable to discern whether Defendant seeks to move for summary judgment on this separate claim, we do not reach it. Therefore, Plaintiff's disparate impact claim remains.

hair up or down without a restriction on length, but prohibited men from having their hair reach below the tops of their shirt collars. *Id.* Men could not wear nail polish; women could wear nail polish, but only in certain colors. *Id.* Finally, each had to wear solid black leather shoes. *Id.*

Plaintiff argues that imposing a requirement that female employees wear makeup and not imposing such a requirement on males demonstrates discrimination. Opp. at 9. As stated, to resolve this issue we must look at whether the burdens imposed are equal, not merely whether one sex is burdened. While we agree that some women may consider the requirement to wear makeup burdensome, we also think that some men may feel the same way with regard to the male makeup policy. Women must wear makeup. Men cannot. As Plaintiff states "in modern society, both men and women wear makeup." *Id.* Thus, prohibiting men from wearing makeup may be just as objectionable to some men as forcing women to wear makeup is to Plaintiff.

In addition to the makeup provision, the policy forbids men from having the length of their hair fall below the tops of their shirt collars. Ex. E, attached to Def.'s Motion. There is no restriction on the length of women's hair. As Defendant points out, this requirement surely constitutes a burden on men that is not imposed on women. The other requirements are equally restrictive to both males and females.

Because a fair reading of the policy indicates that it is applied "evenhandedly to employees of both sexes," *Gerdom,* 692 F.2d at 606, we conclude that this situation is more like the sex-differentiated standards that impose equal but different burdens on both sexes, than that discussed in *Frank* which imposed a different and heavier burden on women. *Frank,* 216 F.3d at 855. Moreover, the makeup re-

quirement involves a mutable characteristic, which does not infringe on equal employment opportunities due to one's sex. *Baker,* 507 F.2d at 897. Therefore, it does not violate Title VII under a disparate treatment theory.

We note that much of Plaintiff's authorities relate to the rule announced in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), in which the Supreme Court determined that employers cannot discriminate on the basis of sexual stereotyping. The Ninth Circuit recently applied *Price Waterhouse* to determine that sexual stereotyping by male co-employees was evidence of abuse for purposes of same-sex sexual harassment. *Nichols v. Azteca Restaurant Enterprises, Inc.,* 256 F.3d 864 (9th Cir.2001). However, the court in *Nichols* made sure to limit *Price Waterhouse's* reach from the situation we confront here, stating "[o]ur decision does not imply that there is any violation of Title VII occasioned by reasonable regulations that require male and female employees to conform to different dress and grooming standards." *Id.* at 875 n. 7. As the Ninth Circuit expressly excepted grooming and appearance standards from the confines of the *Price Waterhouse* rule, we reject Plaintiff's argument that it applies here.

In addition, Plaintiff's cursory claim of same-sex sexual harassment has no merit. Plaintiff provided no allegations in her complaint, nor evidence in support of her opposition, to show that she was subjected to sexual harassment of any sort.

We are mindful that the true gravamen of Plaintiff's complaint appears to be that it is discriminatory to force a woman to wear makeup because she feels it is exploitive and perpetuates women's roles as sex objects. Plaintiff believes Defendant's policy negatively impacts women by portraying them in this stereotypical manner.

She argues that Defendant should not treat women like "Barbie" dolls. Opp. at 9. Plaintiff is entitled to disagree with and object to the means by which Defendant promotes itself and its employees. Yet even if we agree that Defendant's policy may not be a step forward in freeing women from societal stereotypes, it does not convert Defendant's conduct into unlawful discrimination. *See Alam v. Reno Hilton Corp.*, 819 F.Supp. 905, 913–14 (D.Nev. 1993) (finding that making decisions for hiring casino dealers based on a preference for "barbie doll" images is not discriminatory).

Defendant's sex-differentiated appearance standards impose equal burdens on each sex, and, therefore, do not constitute disparate treatment under Title VII. *Frank*, 216 F.3d at 855. Accordingly, we need not reach the parties' arguments as to whether the requirement is a bona fide occupational qualification. Plaintiff's Title VII claim of disparate treatment fails.

## III. State Claims

### A. Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress, Plaintiff must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation. *Olivero v. Lowe*, 116 Nev. 395, 995 P.2d 1023 (2000) (citations omitted).

As to the first element, Plaintiff claims that "being fired for refusing to wear makeup is extreme and outrageous." Opp. at 14. We do not agree. "Termination of employees, even in the context of a discriminatory policy, does not in itself amount to extreme and outrageous conduct." *Alam*, 819 F.Supp. at 911. More-

over, as discussed, we do not find Defendant's policy discriminatory. Plaintiff has failed to establish a factual dispute as to the first element.

In addition, a showing of severe or extreme emotional distress under the second element requires proof of physical injury or serious emotional distress causing physical injury. *Olivero*, 995 P.2d at 1026. Plaintiff does not dispute this requirement, but claims that such issues are a question for the jury. Although she testified that she felt extremely uncomfortable, ill and violated when she had worn makeup at work in the past, the only physical manifestation of the distress Plaintiff alleges is that she "felt ill." Jespersen Depo. at 138, Ex. A attached to Opp. We note that Plaintiff attested to feeling this way when she had worn makeup years before Defendant instituted the makeup requirement at issue. When Defendant implemented its Personal Appearance Standards, Plaintiff only felt "extremely uncomfortable." *Id.* at 78. There is no evidence of emotional distress causing her physical injury due to either Defendant's conduct regarding its implementation of the standards, or her refusal to comply with them.

Even if we do consider this as evidence of Plaintiff's severe emotional distress, it is insufficient. As Defendant notes, we have previously held that evidence of feelings of "inferiority, headaches [and] irritability" are not enough to amount to severe emotional distress. *Alam*, 819 F.Supp. at 911.

Therefore, Plaintiff's failure to present evidence to show either extreme or outrageous conduct or that she suffered physical injury or distress causing physical injury requires that we dismiss this claim as a matter of law.

### B. Negligent Supervision and Training

A claim of negligent training or supervision requires a breach of a duty of care in

training or supervising an employee. *See Hall v. SSF, Inc.*, 112 Nev. 1384, 930 P.2d 94 (1996). Such claims have been discussed in Nevada law where a third party is harmed by an employee and it is charged that, had an employer exercised reasonable care in training or supervising an employee, the injury would not have occurred. *See, e.g., Vinci v. Las Vegas Sands, Inc.*, 115 Nev. 243, 984 P.2d 750 (1999)(finding no evidence of employer's failure to use reasonable care in training or supervision in plaintiff's action for injuries sustained at casino); *Hall,* 930 P.2d at 99 (noting that an employer has a duty to ensure that employees are fit for their positions in action by injured patron of nightclub).

Plaintiff has neither averred, nor demonstrated through evidence, that such a breach occurred. Instead, the evidence shows that Defendant implemented its policy of requiring makeup and Plaintiff chose not to follow it. As discussed, the policy is not discriminatory.

In response to Defendant's contention, Plaintiff asserts that the policy was ambiguous and that Plaintiff thought as long as she was feeling and looking her best without makeup, she was complying with it. Opp. at 16. Therefore, she asserts she "has presented evidence that Defendant failed to properly train it's [sic] employees in dealing with this situation" and "that Defendant was negligent in supervising its employees . . . ." *Id.* at 16–17. Unfortunately, even if this were a valid argument, Plaintiff presents no evidence to support it. Pleadings alone are insufficient to raise an issue of disputed fact to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, this argument fails.

Plaintiff has not put forth any evidence that Defendant was negligent in the way in which it trained or supervised its employees' implementation of the Personal Appearance Standards. As there is no evidence that Defendant breached any duty owed to Plaintiff, this claim must also fail.

**IT IS THEREFORE HEREBY ORDERED THAT**, as addressed above, Defendant's Motion for Summary Judgment (# 20) is **GRANTED**. Summary judgment has therefore been granted as to all of Plaintiff's claims except for the claim of disparate impact.

### MINUTE ORDER IN CHAMBERS

**IT IS HEREBY ORDERED** that the motion for reconsideration (# 26), filed by defendant on November 1, 2002, is **GRANTED** on the following basis.

The original motion for summary judgment filed by defendant did not seek summary judgment on the basis of disparate impact, but only on the basis of disparate treatment. Nevertheless, the motion for reconsideration has been treated by the parties, in and of itself, as a motion for summary judgment on the issue of disparate impact. In the course of presentation and opposition to the motion for reconsideration, the parties have had a full opportunity to brief the issue of summary judgment as to disparate impact.

The parties agree that there is no genuine issue of material fact. Whether the defendant's policy has disparate impact is an issue of law for the Court. We conclude that the policy does not have disparate impact as a matter of law. There is no evidence that it falls more harshly on one gender than the other. Therefore, we grant summary judgment on the issue of disparate impact in favor of defendant and against plaintiff.

**IT IS, THEREFORE, HEREBY ORDERED** that defendant's motion (# 26) treated as a motion for partial summary judgment on the issue of disparate impact is **GRANTED**.

1196

All other issues in the action have previously been disposed of by our previous orders.

*IT IS, THEREFORE, HEREBY ORDERED* that the Clerk shall enter summary judgment in favor of defendant and against plaintiff.