142 Nev., Advance Opinion 6

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

RONNY MOORE,
Appellant,
vs.
THE PRIMADONNA COMPANY, LLC,
D/B/A WHISKEY PETE'S HOTEL &
CASINO, A NEVADA LIMITED
LIABILITY COMPANY; AND FULL
SERVICE SYSTEMS CORPORATION, A
FOREIGN CORPORATION,
Respondents.

No. 89261-COA



FILED

JAN 29 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Ronny Moore appeals from a district court order granting summary judgment in a personal injury action. Eighth Judicial District Court, Clark County; Veronica Barisich, Judge.

*Affirmed in part, reversed in part, and remanded.*

Burk Injury Lawyers and Christopher D. Burk, Las Vegas,
for Appellant.

Brandon Smerber Law Firm and Lew W. Brandon, Jr., and Ryan Venci, Las Vegas,
for Respondent The Primadonna Company, LLC.

Homan, Stone & Rossi, APC, and Bernadette A. Rigo, Las Vegas,
for Respondent Full Service Systems Corporation.

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

26-04431

By the Court, WESTBROOK, J.:

Under the mode-of-operation approach to premises liability, a plaintiff need not prove that a defendant had actual or constructive knowledge of a hazardous condition on its premises if the mode of operation of the defendant's business makes it reasonably foreseeable that the hazard and resulting injury would occur. *FGA, Inc. v. Giglio*, 128 Nev. 271, 281, 278 P.3d 490, 496 (2012). In *Giglio*, the Nevada Supreme Court recognized that the mode-of-operation approach can apply to injuries occurring at self-service business establishments but concluded it does not apply to injuries occurring at sit-down restaurants absent an additional showing. *Id.* at 282, 278 P.3d at 497. In discussing the rationale for mode-of-operation liability and why it generally should not be extended to sit-down restaurants, *Giglio* described self-service operations as a "newer merchandizing technique[ ]" and explained that a business owner who chooses "to have customers perform tasks that were traditionally performed by employees" should bear the risk of their chosen mode of operation. *Id.* at 280-81, 278 P.3d at 496.

In this case, the district court erroneously concluded that these reasons given by the supreme court for limiting the mode-of-operation approach were additional elements that a plaintiff must prove before it could be applied in the self-service context. Because no such showing is required for mode-of-operation liability, the district court erred in granting summary judgment on this basis. We therefore affirm in part,[1] reverse in part, and remand this matter to the district court for further proceedings.

---

[1]On appeal, Moore does not challenge the district court's grant of summary judgment on his negligent hiring, training, supervision, and retention claim. Thus, we affirm the district court's grant of summary



## FACTS AND PROCEDURAL HISTORY

In 2019, Ronny Moore stopped to get gas at a Flying J truck stop in Primm, Nevada, when he slipped and fell on a foreign substance and injured himself. Believing the foreign substance to be spilled gasoline, Moore sued respondents The Primadonna Company, LLC, dba Whiskey Pete's Hotel & Casino, the owner of the property, and Full Service Systems Corporation, the company that provided janitorial services at the truck stop, for negligence and negligent hiring, training, supervision, and retention.

Primadonna moved for summary judgment. Relevant to this appeal, Primadonna argued that Moore presented no evidence that it had actual or constructive notice of the spilled fuel. Full Service joined the motion, also asserting that it lacked actual or constructive notice of the slip-and-fall hazard. Moore opposed Primadonna's motion for summary judgment and Full Service's joinder of that motion. In his opposition, Moore acknowledged that he could not demonstrate that respondents had actual or constructive notice of the spilled fuel as required to succeed under a traditional premises-liability theory. Instead, relying on *Giglio*, he argued that he demonstrated a genuine dispute of material fact as to whether they had notice of the spill under the mode-of-operation approach to premises liability, thereby negating summary judgment. Primadonna responded that Moore failed to present evidence supporting each of that approach's elements, thus Moore could not use that approach to defeat summary judgment. Namely, Primadonna argued that Moore failed to show that (1) the dispensing of fuel was a task traditionally performed by employees,

---

judgment as to this claim. *See Palmieri v. Clark County*, 131 Nev. 1028, 1033 n.2, 367 P.3d 442, 446 n.2 (Ct. App. 2015) (declining to consider issues that the appellant failed to raise on appeal).

and (2) self-service fueling was a newer merchandising technique. Similarly, Full Service argued that Moore failed to show that employees traditionally pumped fuel for commercial truck drivers.

The district court entered an order granting respondents' motions and rendering summary judgment in their favor. The order stated the district court awarded summary judgment to respondents because, among other things,[2] Moore "produced no evidence that the self-service of fuel [was] a newer merchandising technique that would support a theory of liability based on [a] mode of operation" and he "produced no evidence that, in Nevada, . . . the dispensing of fuel was traditionally performed by an employee as opposed to a vehicle driver, particularly related to commercial drivers such as [Moore]," so he again "fail[ed] to support a mode of operation theory of liability." (Internal quotation marks omitted.) Because the district court granted summary judgment on this basis, it did not determine whether Moore produced any evidence that his injury was attributable to a reasonably foreseeable dangerous condition at the gas station related to its self-service mode of operation. This timely appeal followed.

*ANALYSIS*

On appeal, Moore argues that the district court erred when it determined that he could not rely on the mode-of-operation approach to premises liability to seek redress for an injury suffered at a self-service gas station unless he first produced evidence that dispensing fuel was "traditionally performed" by gas station employees and that self-service

---

[2]The district court also determined that there was no evidence that respondents had actual or constructive knowledge of the spill as required to succeed under the traditional theory of premises liability. Because Moore does not challenge this determination on appeal, we decline to address it. *See Palmieri*, 131 Nev. at 1033 n.2, 367 P.3d at 446 n.2.

fueling was a "newer merchandizing technique." Because these are not elements that must be proven for the mode-of-operation approach to apply in the self-service context, the district court erred in granting summary judgment based on Moore's failure to submit that proof.

"This court reviews an order granting summary judgment de novo." *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). "[S]ummary judgment is appropriate 'when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly before the court demonstrate that no genuine [dispute] of material fact exists, and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005)); *accord* NRCP 56(a).

In the context of premises liability for negligence, "a business owes its patrons a duty to keep the premises in a reasonably safe condition for use." *Sprague v. Lucky Stores, Inc.*, 109 Nev. 247, 250, 849 P.2d 320, 322 (1993). When a patron slips and falls due to a foreign substance that was on the floor because of the actions of the business owner or one of its agents, "liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care." *Id.* But when the foreign substance came to be on the floor because of the actions of someone other than the business or its employees, traditionally the business would only be liable if it "had actual or constructive notice of the condition and failed to remedy it." *Id.* at 250, 849 P.2d at 323. As our supreme court recognized in *Giglio*, "[h]owever, there is a modern trend toward modifying this traditional approach to premises liability to accommodate newer merchandising techniques," like those found in self-service establishments.

128 Nev. at 280, 278 P.3d at 496 (citing *Sheehan v. Roche Bros. Supermkts., Inc.*, 863 N.E.2d 1276, 1281-82 (Mass. 2007)).

One alternative to the traditional approach is mode-of-operation liability, which comes into play when a business "owner's chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur." *Id.* at 281, 278 P.3d at 496 (quoting *Sheehan*, 863 N.E.2d at 1283). In these situations, a plaintiff need not prove actual or constructive notice of the dangerous condition; rather, "a store owner could be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions." *Id.* (quoting *Sheehan*, 863 N.E.2d at 1283).

The Nevada Supreme Court first addressed mode-of-operation liability—albeit without identifying it by name—in *Sprague.* 109 Nev. at 251, 849 P.2d at 323. *Sprague* involved a business's liability for an injury suffered by a plaintiff who slipped and fell on a squished grape in the self-service produce section of a grocery store. *Id.* at 248-51, 849 P.2d at 321-23. In reversing the district court's grant of summary judgment to the defendant grocery store, the court implicitly adopted the mode-of-operation approach. *Id.* at 251, 849 P.2d at 323. Specifically, the supreme court concluded that "[e]ven without a finding of constructive notice" of the grape on the floor, the jury could have found that the grocer "should have recognized the impossibility of keeping the produce section clean by sweeping" as sufficient evidence was presented to allow the jury to find the grocer "was negligent in not taking further precautions, besides sweeping, to diminish the chronic hazard posed by the produce department floor." *Id.*

Subsequently, in *Giglio*, the supreme court considered whether mode-of-operation liability would extend beyond the self-service context in a case where a plaintiff slipped and fell while on her way to the restroom at a sit-down restaurant. 128 Nev. at 276, 280-82, 278 P.3d at 493, 496-97. There, the plaintiff sued the restaurant for negligence under a premises-liability theory, and the district court instructed the jury on both the traditional and mode-of-operation approaches to premises liability. *Id.* at 276-77, 278 P.3d at 494. Without identifying which approach it relied upon, the jury found in favor of the plaintiff. *Id.* at 278, 278 P.3d at 494-95. The restaurant appealed, arguing that giving a mode-of-operation instruction was improper when the plaintiff's injury occurred at a sit-down, rather than a self-service, restaurant. *Id.*

In addressing whether the mode-of-operation approach should be extended beyond the self-service context, the supreme court explained that "[t]he rationale underlying the mode of operation approach is that an owner of a self-service establishment has, as a cost-saving measure, chosen to have his customers perform tasks that were traditionally performed by employees," so if a customer "negligently create[d] a hazardous condition, the owner is 'charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees.'" *Id.* at 281, 278 P.3d at 496 (quoting *Ciminski v. Finn Corp.*, 537 P.2d 850, 853 (Wash. Ct. App. 1975), *abrogated in part by Pimentel v. Roundup Co.*, 666 P.2d 888, 893 (Wash. 1983)).

The supreme court emphasized, however, that "[u]nder the mode of operation approach, 'the plaintiff's burden to prove notice is not eliminated.'" *Id.* (quoting *Sheehan*, 863 N.E.2d at 1283). "Instead, the plaintiff satisfies the notice requirement if he establishes that an injury was

Court of Appeals
of
Nevada

(O) 1947B

7

attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." *Id.* (quoting *Sheehan*, 863 N.E.2d at 1283).

Based on this rationale, the supreme court held "that mode of operation liability does not generally extend to . . . sit-down restaurant[s]." *Id.* at 282, 278 P.3d at 497. In particular, the court stated that it saw "no reason to extend [such] liability to [sit-down restaurants] absent" a showing that the restaurant had employees perform tasks that "gave rise to a foreseeable risk of a regularly occurring hazardous condition for its customers similar to the condition that caused the injury." *Id.* The supreme court required this additional showing because the owners of sit-down restaurants "have not created the increased risk of a potentially hazardous condition by having their customers perform tasks that are traditionally carried out by employees." *Id.*

In this case, the district court misread *Giglio* to the extent it determined that *Giglio* requires a plaintiff who is injured at a self-service establishment to show that customers were performing tasks that were "traditionally performed by employees" or that the establishment's self-service operation was a "newer merchandising technique" in order to rely on the mode-of-operation theory of premises liability. While the *Giglio* court noted that mode-of-operation liability *typically* applies where a business has "customers perform tasks that were traditionally performed by employees" and that the adoption of this approach to premises liability was part of a response to "newer merchandising techniques," these points were made in discussing the policy rationale underpinning the mode-of-operation approach. *Id.* at 280-81, 278 P.3d at 496. And the *Giglio* court ultimately referenced these policy considerations as supporting its decision not to

extend mode-of-operation liability to the sit-down restaurant at issue in that case. *Id.* at 282, 278 P.3d at 497. But nothing in the *Giglio* decision can be read as suggesting that these policy principles somehow constitute additional elements that must be proven to support a premises-liability claim under the mode-of-operation approach. Instead, as the supreme court recognized, this approach is available in the self-service context where a plaintiff can show that their injury was caused by a reasonably foreseeable hazard related to the business's self-service model. *Id.* at 281, 278 P.3d at 496.

Like *Giglio*, the first Nevada decision to address the mode-of-operation approach—*Sprague*—makes no mention of any requirement that a plaintiff show that customers performed a service traditionally performed by employees of such a business or that the business's self-service model was a newer merchandising technique. Instead, the *Sprague* court focused on "the chronic hazard" within the grocery store's self-service produce department and whether the grocer was negligent in failing to recognize "the impossibility of keeping the produce section clean by sweeping" and not taking further precautions beyond sweeping to address this issue in reversing the district court's grant of summary judgment to the grocery store. 109 Nev. at 251, 849 P.2d at 323.

The extrajurisdictional authority that the *Giglio* court relied on in making its decision likewise contains no such requirements for a plaintiff to establish premises liability based on its self-service mode of operation. *See Sheehan*, 863 N.E.2d at 1286-87 (holding that a plaintiff satisfies the notice requirement for premises liability if they prove that a reasonably foreseeable unsafe condition existed on the business premises resulting from an owner's self-service business and the plaintiff slips as a result of

the unsafe condition); *Ciminski*, 537 P.2d at 853, 856 (recognizing that, "[i]n choosing a self-service method of providing items, [an owner of a self-service operation] is charged with the knowledge of the foreseeable risks inherent in such a mode of operation"); *Fisher v. Big Y Foods, Inc.*, 3 A.3d 919, 935-36 (Conn. 2010) (explaining that "when a plaintiff injured by a transitory hazardous condition on the premises of a self-service retail establishment fails to show that a particular mode of operation made the condition occur regularly or rendered it inherently foreseeable, the plaintiff must proceed under traditional premises liability doctrine, i.e., he must show that the defendant had actual or constructive notice of the particular hazard at issue").

Further, a review of the broader sphere of extrajurisdictional mode-of-operation cases likewise demonstrates that a plaintiff utilizing this approach to premises liability in the self-service context is not required to show that the business has customers perform a task traditionally performed by employees or that its self-service business model constituted a newer merchandising technique. *See, e.g., Jeter v. Sam's Club*, 271 A.3d 317, 322 (N.J. 2022) (explaining the requirements of the mode-of-operation approach); *Hembree v. Wal-Mart of Kan.*, 35 P.3d 925, 928 (Kan. Ct. App. 2001) (same); *Gump v. Wal-Mart Stores, Inc.*, 5 P.3d 407, 410-11 (Haw. 2000) (same).

Given the apparent confusion surrounding the requirements to assert a premises-liability claim under the mode-of-operation approach, we now clarify that a plaintiff need not demonstrate that the business has customers perform tasks that were traditionally done by employees or that its self-service business model was a newer merchandising technique. To satisfy the notice requirement, a plaintiff need only demonstrate that their

"injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." *Giglio*, 128 Nev. at 281, 278 P.3d at 496 (quoting *Sheehan*, 863 N.E.2d at 1283).

Applying this holding to the case before us, the district court erred by finding that Moore's claims could not survive summary judgment under a mode-of-operation approach because he "produced no evidence that the self-service of fuel is a newer merchandising technique" or that "the dispensing of fuel was traditionally performed by an employee." (Internal quotation marks omitted.) Because—as detailed above—no such showing is required, the court's grant of summary judgment on this basis was in error. *See Cuzze*, 123 Nev. at 602, 172 P.3d at 134 (providing that a district court order granting summary judgment is reviewed de novo). We therefore reverse the district court's decision to the extent it granted summary judgment on this basis and remand this matter for the district court to determine, in the first instance, if Moore raised a genuine dispute of material fact as to whether his slip-and-fall injury was attributable to a reasonably foreseeable dangerous condition on Primadonna's premises related to its self-service mode of operation.[3]

## CONCLUSION

Under the mode-of-operation approach to premises liability, a plaintiff who is injured at a self-service business establishment can satisfy the notice requirement of a negligence action if they can show their "injury was attributable to a reasonably foreseeable dangerous condition on the

---

[3]To the extent the parties raise arguments not specifically addressed in this opinion, we have considered the same and conclude that they need not be reached given the disposition of this appeal.

owner's premises that is related to the owner's self-service mode of operation." *Giglio*, 128 Nev. at 281, 278 P.3d at 496 (quoting *Sheehan*, 863 N.E.2d at 1283). A plaintiff need not also show that the self-service function was traditionally performed by employees or that the owner adopted a self-service mode of operation as a newer merchandising technique.

We therefore reverse the district court's grant of summary judgment on Moore's premises-liability negligence claim and remand for further proceedings consistent with this opinion. Because Moore did not challenge the grant of summary judgment on his negligent hiring, training, supervision, and retention claim, however, we affirm the district court's decision as to that claim.

_____, J.
Westbrook

We concur:

_____, C.J.
Bulla

_____, J.
Gibbons